Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

_____ Division

|  |  |
|---|---|
| Robert W. Cronin _____ <br> *Plaintiff(s)* <br> *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* <br> -v- <br> Julie L. Jones, Sec'y. Fla. Dept. of Corr. <br> Dr. Joey Kenney, MD <br> Dr. Joseph Shubert, MD <br> Dr. Errol Campbell, MD <br> *Defendant(s)* <br> *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | Case No. 3:17-cv-1283-J-39 JBT <br> *(to be filled in by the Clerk's Office)* <br><br> FILED |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

I.    **The Parties to This Complaint** *(see also Attachment Pages 3A-B)*

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name                    Robert W. Cronin

All other names by which
you have been known:    not applicable (N/A)

ID Number               0-K62309

Current Institution     Suwannee C.I.- Annex
Address                 5964 U.S. Highway 90
                        Live Oak        FL      32060
                        *City*          *State*     *Zip Code*

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1
Name                    Julie L. Jones
Job or Title *(if known)*   Secretary
Shield Number           N/A
Employer                Florida Department of Corrections
Address                 501 South Calhoun St.
                        Tallahassee     FL      32399-2500
                        *City*          *State*     *Zip Code*
                        ☐ Individual capacity  ☒ Official capacity

Defendant No. 2
Name                    Dr. Joey T. Kenney, MD
Job or Title *(if known)*   Medical Doctor
Shield Number           N/A (FL. med. license # ME67656)
Employer                Shands Live Oak Hospital (license #4314)
Address                 1100 11th Street, S.W.
                        Live Oak        FL      32064
                        *City*          *State*     *Zip Code*
                        ☒ Individual capacity  ☐ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3
    Name                  Dr. Joseph Shubert, M.D.
    Job or Title *(if known)*  Executive Director
    Shield Number       N/A
    Employer            Corizon Health
    Address (represented by) Gregg A. Toomey, The Toomey Law Firm,
                        1625 Hendry St., Ste. 203, Ft. Myers, FL 33901
                            *City*         *State*    *Zip Code*
                  [X] Individual capacity   [ ] Official capacity

Defendant No. 4
    Name                  Dr. Errol E. Campbell, M.D.
    Job or Title *(if known)*  Physician Advisor—Reg'l Utilization Mgt.
    Shield Number       N/A (FL. medical license # ME80593)
    Employer            Centurion Institutional Healthcare
    Address             1203 Governor Square Blvd., Ste. 600
                    Tallahassee     FL      32301
                         *City*       *State*    *Zip Code*
                  [X] Individual capacity   [ ] Official capacity

**II.**   **Basis for Jurisdiction**  (See also Attachment Page 3B)

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

      [ ] Federal officials (a *Bivens* claim)

      [X] State or local officials (a § 1983 claim) plus Supplemental Jurisdiction (28 U.S.C. §1367) of State torts (negligence + medical negligence)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

      U.S. Constitutional Amendment VIII,
      Supplemental Jurisdiction: Fla. Stat. §§ 768. et seq.; 766 et seq.

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?   N/A

## I.      Parties to Complaint (continued):

1. Plaintiff Cronin is an inmate within the Florida Department of Corrections (hereinafter FDC)(DC# 0-K62309) and currently resides at Suwannee C.I. - Annex (Hereinafter SWCI-A), the location of the incident(s) which gave rise to this lawsuit(s).

2. Defendant Jones is the appointed Secretary, FDC (head of entity) on the date the slip-and-fall injury occurred (11/25/15) and remains so as of the date of filing. Ms. Jones is sued in here official capacity for purposes of the §1983 8th Amendment claims of deliberate indifference where Plaintiff seeks prospective relief only. Defendant Jones is also sued in her official capacity, as head of entity, FDC pursuant to Fla. Stat. §768.28, Waiver of Sovereign Immunity, for purposes of the §1367 supplemental Jurisdiction claims of FDC employees' and contractors/subcontractors' negligence and medical negligence respectively; Plaintiff seeks compensatory damages for the State Torts.

3. Defendant Kenney, M.D. was the attending physician on the night of 11/12/15 (and early morning 11/13/15) when Cronin was brought to Shands Live Oak Hospital (hereinafter Shands) for emergency care. On 11/12/15 Shands Hospital System INC. was contracted with FDC or Corizon Correction Healthcare to provide emergency medical services. He is sued in his individual capacity for 8th Amendment U.S. Constitutional violations of deliberate indifference to Cronin's serious medical needs on that date. Plaintiff seeks compensatory damages.

4. Defendant Schubert, M.D. Executive Director of Corizon Health (Hereinafter Corizon). Corizon was contracted by FDC to provide medical and mental health services to FDC inmates from circa 2012 to approximately June 2016. Therefore, Corizon held the FDC medical contract on 11/12/15. Dr. Schubert is sued in his individual capacity for 8th Amendment U.S. Constitutional violations of deliberate indifference to Cronin's serious medical needs during the time Corizon held the FDC contract. Plaintiff seeks compensatory damages.

5. Defendant Campbell, M.D. is Physician Advisor within Regional Utilization Management (UM) of Centurion Institutional Healthcare (hereinafter Centurion). Centurion took over the FDC contract for medical and mental health services from Corizon

3A

in approximately June 2016. Dr. Campbell originally was employed by Corizon in the same position, and was retained by Centurion (as were most, if not all, of the medical staff) when the contract was assumed. Centurion retains the medical contract as of the date of this complaint. Dr. Campbell is sued in his individual capacity for 8th Amendment U.S. Constitutional violations of deliberate indifference to Cronin's serious medical needs. Plaintiff seeks compensatory damages.

## II.     Basis for Jurisdiction (cont.):

Over 2-years have passed since the first slip-and-fall workplace injury, an 8th and 14th Amendment Constitutional violation of deliberate indifference to his serious medical needs predominates over state claims. The slip-and-fall injury to the Plaintiff is the common nucleus between the State § 766 *et. Seq.* §768 et. Seq. claims and the Federal §1983 claim. A connected series of actions/inactions by persons within FDC and/or their medical contractors/subcontractors resulted in the serious and now possibly uncorrectable, injuries that the plaintiff agonizes over today. Should these claims go to trial, then facts and witnesses will overlap; it would certainly serve judicial economy for the Middle District Court – Jacksonville Division, to exercise its Supplemental Jurisdiction over these unequivocally connected Florida and Federal Claims.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

Defendant Julie Jones as agency leader is responsible for overall administration and oversight of FDC. Jones reviews and authorizes medical contracts within scope of employment. It is well settled by US SCt, 11th Cir and MD Fla. that prison medical contractors (ie Shands, Corizon, Centurion) act "under color of State law" and operate as agents of the State (see also Fla. Stat. §768.28(10)(a).

III.   **Prisoner Status**

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐   Pretrial detainee

☐   Civilly committed detainee

☐   Immigration detainee

☒   Convicted and sentenced state prisoner

☐   Convicted and sentenced federal prisoner

☐   Other *(explain)* _____

IV.   **Statement of Claim**   (See also Attachment Pages 5A-5K)

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   If the events giving rise to your claim arose outside an institution, describe where and when they arose.

Shands Live Oak Regional Hospital on 11/12/15 ≈ 11:00 PM - 11/13/15 ≈ 3:00 AM.

B.   If the events giving rise to your claim arose in an institution, describe where and when they arose.

Slip-and-fall occurred on 11/12/15 at Suwannee C.I.-Annex, north-side dining hall at approx. 5:45 PM. Medical claims continued there upon return from Shands. Second slip-and-fall occurred at SWCI-Annex on 8/14/17 at the south-side dining hall at approx. 3:00 PM. Medical claims continue until the date of filing this complaint.

Page 4 of 11

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.    What date and approximate time did the events giving rise to your claim(s) occur?

11/12/15 at approximately 5:45 PM (PM food service work shift).

D.    What are the facts underlying your claim(s)?  *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See Attachment Pages 5A-5K

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Serious injury to collar bone (clavical) that now protruded above shoulders approximately 2-inches, resulting in severe pain and inability to lift left arm beyond 45°. At institutional emergency medical, Dr. Alexis Figueroa and Nurse A. Hale administered an IV/pain meds. and attempted procedure(s) to re-set left shoulder/clavical, to no avail. Recognizing serious injury mandated treatment, Dr. Figueroa transferred Cronin to Shands Live Oak Hospital (beyond pain shots, no treatment received). On 7/18/16 Orthopedic specialist recommended ORIF surgery(s) (Campbell denied) and indicated that over time the surgeries become less successful, injury exacerbated over 2-years. New wrist injury in serious pain, medical refused Plaintiff.

## VI.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. See SEF If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims. **Prospective/Injunctive:** Orthopedist follow-up from 7/18/16, examination, re-assessment of current physical condition and surgery success (ORIF and, or other), Orthopedist post-surgery follow-up, rehabilitation and adequate medication for pain, infection etc. **Damages:** contingent upon surgery(s) being 100% successful and along with rehabilitation, restoring Plaintiff to his full physical condition immediately prior to 11/12/15. Also depending upon neurologist examination, diagnosis and treatment of numbness in hands if determined a result of slip-and-fall of injury and/or delay of surgical restoration, and no further medical complications resulting. Based on no attorney being retained, expeditious settlement of claims. Compensatory include Plaintiff's pain and suffering and loss of ability to exercise for apprx 2-years—$150,000 does not include costs of suit nor court fees.

## IV. Statement of Claims (Cont.)

D. Facts underlying claims.

1. On 11/12/15, at approximately 5:45 p.m., in the north-side dining hall of SWCI-A, the inmate food service worker wet-mopped the ceramic tile floor there, and neglected to place the yellow, wet floor caution signs in the wetted area (thin invisible film), to warn of the hazardous condition he created. A serious slip-and-fall was suffered by the Plaintiff and captured on the two video cameras installed in the north-side dining hall, and witnessed by at least two security officers (including Mrs. Palmer) and approximately 20 food service inmate works (including Exposito and White). The inmate employee assigned to working the north-side dining room later indicated that he wasn't safety-trained and didn't know that he must set out the yellow warning signs, as a safety precaution.

2. On 11/12/15, shortly after his slip-and-fall, Prospective Plaintiff Cronin was taken as an emergency to SWCI-A's treatment room where Dr. Alexis Figueroa, M.D. examined the injury. The protruding collar-bone was obvious to the kitchen officers, Dr. Figueroa, M.D., and his nursing staff. Dr. Figueroa attempted, after injections of pain medications, several procedures to set the clavicle into place, all to no avail.

3. M.D. Figueroa had Cronin placed in a sling and transported to Shands for emergency medical treatment. There, several x-rays were taken and Cronin was seen by Defendant Dr. Joey Kenney, M.D., where Kenney performed a cursory examination only. Cronin advised Dr. Kenney that both shoulders were fully-surgically-repaired, prior to incarceration, allowing him to conduct hydrogeologist field work and participate in sports/exercise activities. Plaintiff Cronin fully explained to Dr. Kenney that the prominent clavicle injury was fresh, resulting from the slip-and-fall that just occurred and that pre-injury x-rays were available on the SWCI-A computer. After injecting stronger pain medication, and claiming that his review of Shands' x-rays showed no dislocation or fracture, Defendant Kenney told Cronin "You'll be fine" and released him to return to the prison.

5A

4. In a following appointment on 12/4/15, Dr. Figueroa expressed disbelief that nothing was done at Shands to repair the clearly-obvious protruding clavicle. He said "you need to see an orthopedist" and ordered that follow up radiographs be taken by Tech Care X-ray (hereinafter Tech Care). Figueroa prescribed Indocin for shoulder pain, however, Defendant Campbell (at Corizon) denied the Indocin on or about 12/10/2015.

5. Tech Care radiologist (Dr. Nayyer Islam, M.D.) apparently never checked his company's records (under the same patient ID number) to use 2011 x-rays for a meaningful diagnosis on 12/14/15, and wrote on his report: "Comparison with prior radiographs, if available would be beneficial" and indicated the observed clavicle dislocation was "age-indeterminate".

6. Dr. Figueroa completed a DC4-702 on 2/4/16, for a consult with an Orthopedic Specialist. According to Dr. Figueroa, the Physician Advisor Dr. Campbell (at Corizon) had a usual practice of indiscriminately refusing to approve Figueroa's professional recommendations.

7. On 3/19/17 Corizon replied to Figueroa's DC4-702 for Orthopedist Consult with an Alternative Treatment Plan (ATP) – effectively denying the examining M.D.'s (Figueroa) prescribed medical care.

8. On 6/3/16, Dr. Figueroa submitted a new DC4-702 to the new FDC Health Services contractor, Centurion, for orthopedic Specialist Consult. Centurion later approved it for appointment on July 18, 2016.

9. The Orthopedist (Dr. Kleinhands, M.D. of Jacksonville Orthopedic Institute) took his own set of x-rays, conducted an examination, and completed a DC4-702, where he recommended Open Reduction, Internal Fixation (ORIF) surgeries. Dr. Kleinhands informed the Plaintiff that, "normally the ORIF procedure(s) would be highly successful, but "not so much so after 9-months", Dr. Kleinhands expressed his frustration with Corizon impudently denying his surgical recommendations "to save money" and hoped the new company – Centurion – would be better. The Orthopedist provided a medically accurate and expert diagnosis and

5B

recommendation for surgical repair of Plaintiff's clavicle/left shoulder injury. Dr. Figueroa submitted Dr. Kleinhands' DC4-702 recommendation to Centurion.

10. On 9/16/16, Centurion proved to be no better than Corizon because Defendant Dr. Campbell rejected the examining expert's recommendations via another ATP. As of the date of this Complaint, surgical repair of the 1st slip-and-fall has not been performed, while Cronin continues to experience severe pain, increased disability, and deterioration of his injury.

11. On 9/27/16 at a follow-up appointment with Dr. Figueroa (assisted by RN. Bridges), the latest ATP was reviewed by the Plaintiff; Issued by Defendant Dr. Campbell (now with Centurion). Campbell's ATP (9/16/16) stated: "Orthopedist evaluation does not indicate type of AC join separation" yet, page 2 of the orthopedist's specialist consult form, dated 7/18/16 clearly reported in "Diagnostic Findings" that Plaintiff's left shoulder dislocation as grade-3. After examination, Dr. Figueroa told Plaintiff Cronin that "it is obvious that [the injury] is not going to heal itself if not surgically repaired". He also advised Cronin that Centurion would not approve an MRI because "they don't want any extra evidence to show that [Plaintiff] need[s] an expensive surgery".

12. On 12/20/16, at a follow-up with Dr. Figueroa and Nurse Bridges, Dr. Figueroa called Defendant Campbell on the phone to persuade Campbell to approve Cronin's needed surgery. Alexis Figueroa reported back to the Plaintiff in the exam room that "[Campbell] doesn't want to help no matter what, he said he doesn't care". Figueroa then stated "I don't know what else to do at this point". Nurse Bridges added that she thinks the reason or all the inmate refusals is because Centurion intentionally under-bid their contract with FDC, just to get it.

13. On or about 1/15/17, Plaintiff Cronin began suffering from numbness and pain in his left hand and forearm, and to a lesser extent, his right as well. The numbness in fingers particularly and pain, increasingly got worse. On 2/16/17, Dr. polo (contract M.D.) prescribed meloxicam for the pain. At a follow-up 3/30/17 appointment with Dr. Figueroa (assisted by Nurse Bridges), Dr. Figueroa and RN Bridges had Plaintiff

5C

Cronin perform tests for Carpal Tunnel Syndrome which Cronin was then excluded from. Dr. Figueroa's preliminary diagnosis was that it was a pinched nerve in the neck area, that may be related to the unrepaired 11/12/15 injury. Cronin has never had a neurologist consult.

14. On 5/18/17 at a sick call appointment with Dr. Alexis Figueroa (assisted by Nurse Arnold), Plaintiff Cronin complained of exacerbating pain in his left shoulder/clavicle area and that he was becoming increasingly disabled – his left shoulder frequently starting to pop out of place. Dr. Figueroa put Plaintiff through a series of mobility tests and determined Cronin's unrepaired shoulder "condition will only get worse overtime to the point where an Orthopedist won't touch it".

15. On June 12, 2017, Plaintiff Cronin served a Notice of Intent to Initiate Litigation on all Defendant(s) and the Fla. Dept. of Financial Services (pursuant to Fla. Stat. §§766.106; 768.28(a). Coincidentally, on 7/26/17, Plaintiff Cronin was reassigned to food service despite having pre-surgery medical restrictions and active medical passes in his medical jacket. Plaintiff contends that action represents insidious retaliation by FDC Classification under directives from superior administration. Plaintiff Cronin sent an emergency grievance to the Warden followed by an appeal to the FDC Secretary complaining of continued safety violations which pose a substantial risk of further personal injury. Plaintiff's Grievance/Appeal was denied, however, the State was put on notice.

16. On 8/14/17, Plaintiff Cronin suffered a 2nd slip-and-fall at approximately 3:00 pm in the south-side dining hall. The 2nd slip-and-fall was witnessed by Officer Calahan, approximately 6 inmates and was captured on two video cameras. Again, the FDC dining room worker neglected to place the yellow "wet floor" warning signs in his wet (and greasy) wet-mopped area to advise others of the hazardous condition he created. This new dining room inmate had also never been safety trained in slip-and-fall hazards. Once again, Cronin was wearing his state-issued work boots at the time of the 2nd slip-and-fall. Plaintiff suffered a serious injury (likely fracture) this time to his right wrist, which resulted in severe pain and diminished movement of

his right wrist and hand. Plaintiff was denied examination by the SWCI-A medical staff (Nurse Hancock) and he was not given/prescribed pain medication for the new injury. As of the date of filing, Plaintiff has yet to be seen by Medical relative to the new wrist injury. He has exhausted the grievance process on the 2nd slip-and-fall.

17. Plaintiff Cronin was finally removed from Food Service on 10/18/17. His 3-month re-assignment to the kitchen, although Plaintiff complied as best as possible with Dr. Figueroa's passes of not lifting, pushing, or pulling greater than 20 pounds, proved detrimental to Cronin's physical health.

## Deliberate Indifference

18. The Eighth Amendment Governs that prisoners will not be deprived of the minimal civilized measure of life's necessities. Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of Cruel and Unusual punishment. It forbids prison officials from consciously ignoring the serious medical needs of prison inmates. The obligation of State governments to provide adequate medical care to prisoners is a non-delegable duty that cannot be absolved by contracting with a private entity.

## Serious Medical Need:

19. Plaintiff's dislocated clavicle, torn tendons, and type (grade) 3 left shoulder separation, is a serious medical injury. Cronin is disabled, disfigured, and in serious, acute, and chronic pain. The examining physician Figueroa diagnosed on 11/12/15, the dislocated clavicle/shoulder injury as mandating corrective treatment. On 7/18/16, the Orthopedic Specialist, after review of x-rays and examination, concluded that Plaintiff Cronin required ORIF surgeries. Both Dr. Kleinhands and Dr. Figueroa informed Cronin that the injury will exacerbate overtime if not surgically repaired, and become uncorrectable surgically (or otherwise).

20. Additionally, the clavicle injury is so obvious that even correctional officers (including Palmer) and lay persons (including Exposito and White) easily

recognized the necessity for a doctor's attention. The Orthopedist's x-rays clearly showed where Plaintiff Cronin's clavicle on his left side extended abnormally above his shoulders; approximately 1 ½" to 2". One does not need any training in radiology or orthopedics to see this obvious injury.

21. The slip-and-fall injury has significantly and negatively affected the Plaintiff's capacity for functions of life and he has experienced acute and chronic pain since 11/12/15. Cronin can no longer perform upper-body exercises to keep in shape; every night, sleep is interrupted and tormented due to shoulder pain. The shoulder/clavicle condition has worsened due to the lack of surgical repair, to the point where Plaintiff has lost effective use of his left arm to perform simple everyday tasks like washing his back and hair, removing his shirt, or putting on his jacket without the left shoulder partially dislocating. Due to his disability Cronin has found himself unable to effectively defend himself in the dangerous prison environment. He has lately experienced severe nerve pain and numbness in his arms and hands.

22. If left surgically unrepaired, Plaintiff Cronin faces a substantial risk of ending up fully disabled due to the progressively deteriorating condition, all while experiencing unnecessary infliction of severe pain.

Defendant's knowledge, of need and risk, and disregard

23. Defendant Jones knew about Plaintiff's serious medical need via Plaintiff's extensive exhaustion of the Inmate Grievance Process regarding the slip-and-falls, and the FDC First Report of Injury (11/12/15). Signatories on responses to Cronin's Inmate Grievance Appeals to the FDC Secretary include Ms. Jones' delegates: H. Foskey, Assistant Warden; J. Adams, Secretary's Representative at FDC Bureau of Inmate Grievance Appeals (BIGA); F. Mock, Assistant Warden; an Toni Bowden, Secretary's BIGA Chief. Further, Secretary Jones was informed that FDC for-profit medical contractors usually provided constitutionally deficient medical care by the degrading reports from Florida Legislature's Office of Program Policy Analysis and Government Accountability (OPPAGA), and from inmate lawsuits against Florida for-profit medical contractors. Those medical contractors include Corizon, Wexford

5F

Health Services, and Prison Health Services. They show where the Plaintiff's case is not an isolated incident, but rather that there is a widespread historical pattern of similar constitutional violations relative to FDC medical care through private contractors. Yet Julie Jones continued the policy of hiring those contractors (Corizon, Centurion), all for the purposes of saving money, knowing they cut costs by denying inmates needed medical care under the guise of "Utilization Management". Jones' policy, practice, or custom of permitting the refusal of inmates' expensive treatment, such as Plaintiff's surgery, via her medical contractors, is the moving force behind the medical care constitutional violation in the Plaintiff's situation. She presumably reviewed and approved the health services contracts of both Corizon and Centurion before awarding them.

24. Defendant Dr. Joey Kenney of Shands knew about Plaintiff's serious medical need on 11/12/15. Cronin's protruding clavicle was/is obvious even to lay persons and can be seen clearly on radiographs. M.D. Kenney also performed a brief examination where Cronin displayed his significant left arm immobility. Dr. Kenney, at that point, realized that Plaintiff Cronin was suffering serious pain from the 11/12/15 left shoulder/clavicle injury. Defendant Kenney's actions/inactions the early morning of 11/13/15 in not scheduling Plaintiff with an orthopedic specialist/surgeon for prompt corrective treatment of Cronin's obviously serious slip-and-fall injury, merely giving him another injection of pain killers, then releasing him to be brought back to the prison, were unreasonable; as M.D. Dr. Kenney knew that, if left unattended, the shoulder/clavicle injury posed a substantial risk of serious harm to the Plaintiff. Kenney consciously ignored that risk and Plaintiff's insistence that the injury was new, and his pleas that prior x-rays would prove it. Defendant Dr. Kenney's demeanor during the 11/12-13/15 exam was generally uncaring and suggested he was deliberately indifferent towards the serious medical needs of prisoners. The Plaintiff learned that Dr. Kenney has a history of dealing with emergency access patients similarly.

5G

25. Defendant Dr. Shubert, M.D., knew about Plaintiff Cronin's serious medical need and as an experienced M.D. recognized there was a substantial risk that unrepaired serious injuries like Cronin's would get worse over time. BIGA forwarded all grievance appeals of the Plaintiff's while he exhausted administrative remedies, to his company's FDC Medical Director. In addition, Executive Director Shubert knew his company provided constitutionally inadequate medical care to inmates via his awareness of the numerous federal lawsuits by inmates across the country. It has been said that it is Corizon's business model to delay or deny medical care to save Corizon money. Executive Director, Dr. Shubert instructed company employees to follow that policy. His policies, practices, and/or customs implemented in that vein were the driving force behind his company's constitutional medical violations, including the Plaintiff's. Corizon employees purposely delayed Orthopedic consults for cost-saving reasons – aware that their FDC contract was about to be terminated. On 6/3/16, Dr. Figueroa and Nurse Hancock expressed this view at Plaintiff Cronin's exam. That delay surely was not medically justified, considering the Plaintiff was in severe pain and the slip-and-fall injury became less-successfully-operable as time went on.

26. Defendant, Dr. Errol Campbell, M.D. absolutely knew about Plaintiff's serious medical need because the examining physician, Dr. Figueroa, fully advised him via DC4-702s and teleconferences/e-mails. As Physician Advisor under both Corizon, then Centurion, he was the decision-maker as to whether Plaintiff Cronin was referred to an orthopedist, and to whether the Orthopedist's recommendation for ORIF was approved or denied. He intentionally disregarded the substantial risk posed to Cronin's health by rejecting both M.D. Figueroa's and Specialist Dr. Kleinhands' recommendations. Defendant Dr. Campbell never examined Cronin, yet he made the medical decision to delay the Orthopedist consult for approximately 9-months, and then deny the surgical recommendations of the Orthopedist, while the condition further exacerbated, and additional medical complications arose. Deliberate indifference by Dr. Campbell can be demonstrated by review of the

5H

diagnostic findings of the Orthopedist on his DC4-702 dated 7/18/16 where Dr. Kleinhands determines that Cronin has a grade-3 left AC separation. However, on Dr. Campbell's ATP dated 9/16/16, he claims: "Orthopedist evaluation does not indicate type of AC joint separation", and recommended Cronin return to using a sling and take NSAIDS, which he already denied (Indocin). It appears that Dr. Campbell consciously ignored the Orthopedist's diagnostic findings for purposes of denial of the Orthopedist's recommendation for ORIF corrective surgery, based solely on the fact that surgery would be expensive. Campbell's blatant deliberate indifference is also established by Dr. Figueroa's phone conference with Defendant Campbell on 12/20/16, where Figueroa reported Campbell's response: "He doesn't want to help you. He said he doesn't care!" (See IVD)

<u>Negligence and Medical Negligence</u>

<u>Negligence: Slip-and-fall</u>

27. FDC employees are responsible for the wrongful acts/omissions of neglecting to safety-train inmate food service employees (including slip-and-fall hazards) prior to starting work in SWCI-A Food Service. It was normal custom and practice by kitchen staff to coerce all inmates assigned to Food Service to sign a safety sheet without being given any safety-training at all, and begin work, usually immediately, or be "locked-up" in confinement for refusing to work. In fact, it has been Plaintiff's experience over the past 15 years of incarceration in FDC, that neither he, nor his inmate co-workers have received generally no safety-training, for any prison job. The FDC practice has always been to have inmates sign the safety-training sheet only, then have them begin their assigned job.

28. Legal duty is owed by Defendant Jones to Plaintiff pursuant to Florida Administrative Code (FAC) 33-208.002(22) which states: "Every employee will comply with safety regulations…" Employees at SWCI-A Food Service breached their duty to provide the Plaintiff with a reasonably safe place to work by not complying with safety regulations to safety-train inmate employees. Wetting a

glazed, ceramic tile floor in the dining hall without taking reasonable measures (i.e. installing wet-floor warning signs) to lessen the slip-and-fall risk created, the duty owed to Plaintiff was breached. Plaintiff Cronin's slip-and-falls were a reasonably foreseeable result of Defendant Jones' employees' negligence. By not safety-training inmate employees assigned to food service, a workplace environment with heat, flame, sharp objects, food spills, water hazards et cetera, FDC employees foreseeably created a broader zone of risk of injury, and particularly the slip-and-fall suffered by the Plaintiff (that resulted in his clavicle/left shoulder injury). Injury is inevitable in an institutional kitchen environment of approximately 50 inmate workers (each shift) when no-one is trained by management to take safety precautions. It appears that SWCI-A Food Service staff just didn't care. The pre-suit investigation conducted by the Plaintiff also revealed that there is a significant, documented history of slip-and-fall accidents, resulting in injury requiring medical visits, at SWCI-A Food Service and particularly on the glazed ceramic tile flooring of the dining halls, especially when the yellow warning signs are not installed. This proves constructive knowledge of management, and therefore, foreseeability (Fla. Stat. §768.057). The omission of safety-training inmate employees assigned to food service certainly led to the inmate dining room workers not practicing safety measures which proximately caused the slip-and-fall injuries that impaired the Plaintiff.

29. Certainly, the re-assignment of Plaintiff Cronin to Food Service while he still suffered form the first injury subsequent to him filing the Notice of Intent appears to be an intentional tort.

<u>Medical Negligence</u>

30. FDC Medical Contractors/subcontractors Tech Care and Schryver Medical, LLC (hereinafter Schryver) were medically negligent due to their wrongful acts and omission while assessing Plaintiff's x-rays and failing to correctly report relative to Plaintiff's left clavicle/shoulder, and later right wrist injuries. Cronin's clavicle injury is obvious without x-ray and can clearly be seen, even by lay persons on the

5J

Orthopedist's x-rays. There were a full set of x-rays taken of Plaintiff's shoulders and clavicle on 12/1/11 (by Tech Care, and recorded under Plaintiff's FDC inmate number), prior to his new injuries. Those prior radiographs were not reviewed and negligently overlooked by the radiologists at those companies despite the Plaintiff having fully advised each x-ray technician of their existence when the radiographs were taken. Their torts may have been intentional to save the her client (i.e. FDC, Corizon and/or Centurion) money in treatment costs. Julie Jones' duty of providing FDC inmates with a "community standard" of medical care extends to FDC contractors/subcontractors. The Radiologists employed, breached that duty, and that breach proximately caused Plaintiff's injuries to deteriorate overtime delay due to lack of treatment. It is a reasonably foreseeable result that if a serious slip-and-fall injury, involving dislocation and torn tendons and ligaments, if not accurately diagnosed and surgically repaired in a timely manner, will naturally worsen. Certainly, a State-licensed M.D. Radiologist should have identified Cronin's new clavicle/left shoulder and wrist injuries and realized they will not improve by themselves – the serious medical conditions exacerbating until surgical treatment is performed, while Cronin suffers with serious pain until that time. Dr. Figueroa understood that.

31. The slip-and-fall workplace injuries (that should have been accurately diagnosed by the Radiologists and repaired immediately) proximately caused Cronin to suffer serious pain and left him disabled and disfigured with a loss of capacity for functions of life for now over 2-years and may leave Plaintiff impaired permanently.

5K

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**VII.** **Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

*Fla. Dept. of Corrections, Suwannee Correctional Institution - Annex.*

B. Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☒ Yes

☐ No

☐ Do not know

C. Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

*All claims related to 42 USC § 1983 involving deliberate indifference to my serious medical needs, medical negligence (Fla. Stat. §§ 766.106 et. seq./ 768.28), and negligence (Fla. Stat. §§ 768 et. seq.). All claims exhausted.*

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☒ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes      N/A

☐ No

E.   If you did file a grievance:

1.   Where did you file the grievance?

Grievance box at Suwannee CI-Annex; 2/13 forwarded directly to: Secretary, Florida Department of Corrections, 501 S. Calhoun St, Tallahassee, FL 32399

2.   What did you claim in your grievance? 12 Total: negligence (#1605-231-014), medical negligence (#1601-231-126); thwarting grievance process (#16-6-20610); deliberate indifference to serious medical needs (#1609-231-099); thwarting grievance process (17-6-00491); Continuous safety violations (#1707-231-148); Failure to treat (#1709-231-024)(#1710-231-052)(#1703-231-146) deliberate indifference to serious med. needs (#1709-231-016); failing to treat/thwarting grievance process (#1705-231-063);

3.   What was the result, if any? Reassigned to Kitchen despite unrepaired serious injury from food service (11/12/15) and continuous safety vios (follow-up)(#231-1710-0066).

All grievances above denied (or returned) and appealed.

4.   What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. (Describe all efforts to appeal to the highest level of the grievance process.) All claims fully exhausted via FDC's Inmate Grievance Process (Appeal to FDC Secretary (Defendant Jones) is highest level). (See appeal nos # 16-6-25205, 16-6-10595, 16-6-47196; 17-6-36424 (sick call form vanished)(re-started process); not yet available; 17-6-17250) or grievance resolved at institutional level (medication issues) thereafter.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.    If you did not file a grievance:

1.    If there are any reasons why you did not file a grievance, state them here:

not applicable

2.    If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

not applicable

G.    Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

Inmate Sick Call Forms available in FDC's medical record.

*(Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.   Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

not applicable

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)   _not applicable (N/A)_

Defendant(s)   _N/A_

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_N/A_

3.   Docket or index number

_N/A_

4.   Name of Judge assigned to your case

_N/A_

5.   Approximate date of filing lawsuit

_N/A_

6.   Is the case still pending?

☐ Yes   _N/A_

☐ No

If no, give the approximate date of disposition.   _N/A_

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_N/A_

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

☒ Yes

☐ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit
Plaintiff(s)    Robert W. Cronin
Defendant(s)   Dr. Jack Amole, MD

2.    Court *(if federal court, name the district; if state court, name the county and State)*

Southern District, Florida

3.    Docket or index number
02-14060-CIV-GRAHAM

4.    Name of Judge assigned to your case
Graham (District Judge), P.A. White (Magistrate Judge)

5.    Approximate date of filing lawsuit
2/2002

6.    Is the case still pending?

☐ Yes

☒ No

If no, give the approximate date of disposition    12/2003

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

Dismissed after discovery and grant of summary judgment for defendant. Plaintiff did not appeal.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:      11/13/17

Signature of Plaintiff      _Robert W. Cronin_

Printed Name of Plaintiff   Robert W. Cronin

Prison Identification #     O-K62309

Prison Address      Suwannee CI-Annex, 5964 US. Highway 90

Live Oak                    FL          33060
                            City        State

### B.   For Attorneys

Date of signing:      _____

Signature of Attorney      _____

Printed Name of Attorney   _____

Bar Number      _____

Name of Law Firm      _____

Address      _____

                            City        State      Zip Code

Telephone Number      _____

E-mail Address      _____

Page 11 of 11