UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT W. CRONIN,

    Plaintiff,

v.                                    Case No. 3:17-cv-1283-J-39JBT

JULIE L. JONES, SECRETARY,
FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
_____

## ORDER

Plaintiff Robert Cronin, an inmate incarcerated at Zephyrhills Correctional Institution (ZCI), initiated this action on November 15, 2017, by filing a civil rights complaint (Doc. 1; Complaint). In his Complaint, Plaintiff asserts claims for deliberate indifference to serious medical needs against Julie Jones, the Secretary of the Florida Department of Corrections (FDC), and medical providers, including Dr. Campbell. See Complaint at 3-4.[1] Plaintiff alleges that Defendants were deliberately indifferent to a shoulder injury he sustained when he fell at ZCI in November 2015, by denying surgery and other treatment. Id. at 9-10.

This cause is before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. 61; Motion) against Defendants Jones and Campbell. The Court entered an Order on November 16, 2018, denying Plaintiff's Motion as to the other Defendants. See Order

---

[1] Plaintiff also asserts state-law claims against Defendant Jones. See Complaint at 3, 16-17.

(Doc. 70). However, the Court directed Defendants Jones and Campbell to submit supplemental responses to Plaintiff's Motion because in their original responses, they did not address Plaintiff's request that the FDC be enjoined from forcing him to carry belongings/items in excess of the weight restriction pursuant to a medical pass. See Order at 8-9. Defendants Jones and Campbell have complied (Docs. 75, 76), and Plaintiff, with leave of Court, filed replies (Docs. 84, 85). Defendant Campbell states in his supplemental response (Doc. 75; Campbell Supp.) that he is not employed by the FDC, and "any decisions to transport inmates (including Plaintiff), and how such transportation takes place, are outside of the scope of [his] authority or power." See Campbell Supp. at 1. Plaintiff, in his reply (Doc. 84; Reply to Campbell's Supp.) states that he agrees that Defendant Campbell does not have the authority to control inmate transfers. See Reply to Campbell's Supp. at 7.

Defendant Jones confirms in her supplemental response (Doc. 76; Jones Supp.) that Plaintiff indeed has a current, valid medical pass that restricts him from lifting, pushing, and pulling over twenty pounds. See Jones Supp. at 5. Defendant Jones provides a redacted copy of Plaintiff's current Corrections Data Center (CDC) Health Classifications and Considerations printout (Doc. 76-1), which shows that a medical pass was issued on August 8, 2018, and renewed on October 8, 2018. While recognizing that Plaintiff has a valid medical pass, Defendant Jones states that Plaintiff provides no evidence that FDC employees knowingly forced him to carry personal property in excess of the weight restriction. Id. at 6. According to Defendant Jones, "FDC employees will always honor a valid medical pass/restriction, when properly noted in the CDC, and produced by the inmate." Id. at 5. Defendant Jones points out that Plaintiff does not allege

2

in his Motion that he presented a valid medical pass to any FDC employee "or that he asked for and was denied any such accommodation" after presenting his medical pass. Id. at 6.

Defendant Jones also disputes Plaintiff's characterization of his transfers as "numerous," "excessive," and "near-constant," and his assertion that he is "forced to carry all his personal/legal property to and from the bus while handcuffed, shackled, and chained." Id. at 3, 6 (quoting Motion at 2). According to Defendant Jones, Plaintiff was transferred two times, on July 25, 2018, and on September 12, 2018, each time to "address his medical needs and requests." Id. at 3. The transfers also required "short layovers" at other institutions. Id. Defendant Jones states that during routine transfers, "inmates are only required to move their personal property from their cell/dormitory to the property room," and only after they have done so, are they shackled. She further states that "[n]o inmate, including Plaintiff, is required to move property while being handcuffed, shackled, or chained, and FDC can find no evidence of any incident or complaint made by Plaintiff during his July 25th transfer regarding moving or lifting his personal property." Id. at 6.[2]

In his reply to Jones' supplemental response (Doc. 85; Reply to Jones Supp.), Plaintiff disputes Defendant Jones' assertion that medical passes, if presented to corrections officers during inmate transport, are honored. See Reply to Jones Supp. at 3, 8, 9. He also disputes Defendant Jones' attempt to minimize the physical impact the "short layovers" had on him. Id. at 8, 10. Plaintiff offers his own sworn declaration and the sworn

---

[2] Defendant Jones does not address whether Plaintiff complained about the September transfer.

declaration of another inmate, Arthur Kessler, who was with Plaintiff when he was transferred on July 25, 2018 (Doc. 85-3; Declarations). In his declaration, Plaintiff affirms under penalty of perjury that he was forced to carry all of his personal property (weighing up to 100 pounds), sometimes while fully shackled. See Declarations at 7 ¶ 1. He also avers that he offered to show his medical pass to corrections officers, but they declined to accommodate him. See id. Plaintiff explains in detail that he was required to carry his property between the bus depot and other locations at each stop (layovers) on the following dates: July 25th, July 26th, August 1st, September 12th, September 13th, October 1st, and October 3rd. Id. ¶¶ 1-5.

Inmate Kessler confirms that inmates, including Plaintiff, were "[f]ully hog-tied" and expected to carry their property on and off the bus during layovers. See id. at 5 ¶ 1. He describes the following:

> At every stop we had to de-bus, carry all our property to be searched/scanned then carry it to the dorm we were staying at. The next time we left, we had to carry our property back to the bus. Part of that time, FDC security made sure that we were fully handcuffed with leg shackles and a chain wrapping around our waist, between our legs, and connections [sic] the handcuffs and shackles.

Id. Inmate Kessler also confirms that Plaintiff offered to show his medical pass to the officers, who told him that he must either carry his property or they would throw it away. Id. ¶ 2.

The decision to grant a preliminary injunction is vested in the "sound discretion of the district court." Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002). "Because a preliminary injunction is 'an extraordinary and drastic remedy,' its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." Siegel v.

4

LePore, 234 F.3d 1163, 1179 (11th Cir. 2000) (Anderson, J., concurring) (quoting United States v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983)).

> To receive a preliminary injunction, the plaintiff must clearly establish the following requirements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest."

Keister v. Bell, 879 F.3d 1282, 1287 (11th Cir. 2018), cert. denied, --- S. Ct. ---, 2018 WL 3241787 (Oct. 1, 2018) (quoting Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002)). "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001) (quoting Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1284 (11th Cir. 1990)).

After careful review of Plaintiff's Motion, Defendants' responses, Defendants Jones' and Campbell's supplemental responses, and Plaintiff's replies, the Court finds that Plaintiff has not carried his burden to demonstrate that a preliminary injunction is warranted. As to Defendant Campbell, the Court finds that he is not able to provide Plaintiff the relief he seeks. As to Defendant Jones, Plaintiff has presented evidence that his valid medical pass has not been honored in the past, despite the FDC's policy to ensure medical passes are honored during transport. However, Plaintiff fails to demonstrate that he is entitled to the drastic remedy of injunctive relief because he complains about past harm. He does not assert or provide any evidence that he is likely to face the same harm in the future. A preliminary injunction is meant to prevent future harm that is likely to occur before the case may be resolved on its merits. See Hoop

5

Culture, Inc. v. GAP, Inc., 648 F. App'x 981, 986 (11th Cir. 2016) (citing Siegel, 234 F.3d at 1176-77). To demonstrate entitlement to injunctive relief, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" Siegel, 234 F.3d at 1176. Because Plaintiff asserts only a past harm, he fails to demonstrate that he faces irreparable harm if an injunction does not issue. "[A] party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." Id. at 1177 (quoting Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994)). Accordingly, Plaintiff has not carried his burden to show that he is entitled to injunctive relief. Id. ("[T]he absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.").

If Plaintiff believes that his valid medical pass is not being honored or if he requires an adjustment to the restrictions, he should seek relief through the prison grievance process or by submitting a sick-call request. Additionally, Plaintiff may contact his classification officer to inquire about any concerns he may have about his conditions of confinement, including any access to routine sick call and/or physicians to evaluate his medical needs.[3] Significantly, Plaintiff does not provide any indication that he has grieved the issue to permit prison officials an opportunity to investigate the alleged violations or prevent them from recurring without the need for judicial intervention. Indeed, the records provided show that Plaintiff has successfully used the grievance process in the past when

---

[3] Notably, Plaintiff asserts that "Disability Rights Florida . . . is assisting [him] in obtaining an ADA determination and ADA services." Reply to Campbell's Supp. at 2.

a prison work assignment violated a valid medical pass. See Jones Supp. at 5; Doc. 76-2; Doc. 85-4.

Plaintiff has also filed a Motion for Extension of Time to Reply (Doc. 83; Extension Motion) in which he asserts that he did not receive copies of the following documents because he believes the mailroom staff is interfering with his mail: doc. 68 (Defendant Campbell's original response to Plaintiff's Motion); doc. 69 (Defendant Campbell's Motion to Stay Discovery); and doc. 70 (the Court's Order on Plaintiff's Motion, directing Defendants Jones and Campbell to file supplemental responses). See Extension Motion at 2. Plaintiff asks that the Court direct the Clerk to provide him copies of these documents and grant him 45 days to review and respond to them. Id. He also would like an opportunity to submit an additional reply to Defendants Jones' and Campbell's supplemental responses (Docs. 75, 76). Finally, Plaintiff asks that the Court enjoin the FDC from interfering with his legal mail.

Plaintiff's Extension Motion is due to be granted only to the extent that the Court will direct the Clerk to send him copies of docs. 68, 69, and 70. The Extension Motion is due to be denied to the extent that Plaintiff requests 45 days to respond or reply. Plaintiff has already replied to docs. 75 and 76, making a reply to Campbell's original response to his Motion (Doc. 68) moot. Moreover, the Court finds that Plaintiff's request to submit a second reply to the supplemental responses is due to be denied. See Rule 3.01(c), Local Rules of the United States District Court for the Middle District of Florida ("No party shall file any reply or further memorandum directed to [a] motion or response . . . unless the Court grants leave."). A response to the Court's Order (Doc. 70) is not necessary. Finally, with respect to Campbell's Motion to Stay Discovery (Doc. 69), the Court is prepared to

7

rule on that motion by separate order, and a delay of 45 days for Plaintiff to respond is not in the interest of moving this case toward a resolution on its merits. The Extension Motion is also due to be denied with respect to Plaintiff's request that the Court enjoin FDC from interfering with his legal mail because he has not carried his burden to demonstrate that an injunction is warranted.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion for Preliminary Injunction (Doc. 61) is **DENIED**.

2. To the extent Plaintiff believes that individual corrections officers willfully ignored his valid medical pass, he may pursue a claim against those officers by filing a new civil rights complaint after following the appropriate grievance procedures. The Court directs the **Clerk** to send Plaintiff a civil rights complaint form and affidavit of indigency form if he wishes to institute a new action raising new claims.

3. Plaintiff's Motion for Extension of Time to Reply (Doc. 83) is **GRANTED in part** and **DENIED in part**. The motion is granted to the extent the Court directs the **Clerk** to send Plaintiff copies of docs. 68, 69, and 70. The motion is denied in all other respects.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of January, 2019.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c: Robert W. Cronin
  Counsel of Record