UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT W. CRONIN,

        Plaintiff,

v.                            Case No. 3:17-cv-1283-J-39JBT

JULIE L. JONES, SECRETARY,
FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.

_____

## ORDER

### I. Status

    Plaintiff Robert Cronin, an inmate of the Florida penal system, initiated this action on November 15, 2017 by filing a pro se civil right complaint (Doc. 1; Complaint). Plaintiff asserts claims for deliberate indifference to serious medical needs, medical malpractice, and negligence. See Complaint at 3. He names four Defendants based on their alleged roles at the relevant time, as follows: (1) Julie L. Jones, Secretary of the Florida Department of Corrections (FDC); Dr. Joey T. Kenney, a physician at Shands Live Oak; (3) Dr. Joseph Shubert, Executive Director of Corizon Health; and (4) Dr. Errol A. Campbell, Physician Advisor of Centurion Institutional Healthcare. Id. at 3-4.

    Before the Court are the following motions: (1) Defendant Jones' Motion to Dismiss (Doc. 23; Jones Motion); (2) Defendant Dr. Campbell's Motion to Dismiss (Doc. 28; Campbell Motion); (3)

Defendant Dr. Kenney's Motion to Dismiss and/or Motion for Summary Judgment (Doc. 30; Kenney Motion); (4) Defendant Dr. Shubert's Motion to Dismiss (Doc. 55; Shubert Motion); (5) Plaintiff's Motion for Leave of Court to Conduct Limited Discovery (Doc. 54; Discovery Motion); (6) Defendant Dr. Campbell's Motion to Stay Discovery (Doc. 69; Motion to Stay); and (7) Plaintiff's Request for a Ruling on his Discovery Motion (Doc. 86; Motion to Rule). Plaintiff has responded to Defendant Jones' Motion to Dismiss (Doc. 33; Plaintiff's Jones Response), to Dr. Campbell's Motion to Dismiss (Doc. 50; Plaintiff's Campbell Response), to Dr. Kenney's Motion to Dismiss (Doc. 42; Plaintiff's Kenney Response), and to Dr. Shubert's Motion to Dismiss (Doc. 71; Plaintiff's Shubert Response). Thus, these motions are ripe for this Court's review.[1]

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246,

---

[1] Defendants have not responded to Plaintiff's Discovery Motion or his Motion to Rule, and Plaintiff has not responded to Dr. Campbell's Motion to Stay Discovery. In light of the Court's ruling on the other motions as stated in this order, responses are not necessary.

1247 (11th Cir. 2003) (per curiam). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." _Iqbal_, 556 U.S. at 678, 680. The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Iqbal_, 556 U.S. at 678. Thus, a court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that [the plaintiff] can prove no set of facts that would entitle him to relief." _Omar ex. rel. Cannon_, 334 F.3d at 1247 (citing _Conley v. Gibson_, 355 U.S. 41, 45-46 (1957). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." _Iqbal_, 556 U.S. at 678 Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." _Twombly_, 550 U.S. at 570.

Pleadings submitted by a pro se plaintiff "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." _Tannenbaum v. United States_, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). Courts are under no duty, however, to "re-write" a plaintiff's complaint to find a

claim. <u>Peterson v. Atlanta Hous. Auth.</u>, 998 F.2d 904, 912 (11th Cir. 1993).

### III. Complaint Allegations[2]

Plaintiff's claims arise out of an injury he sustained when he fell at Suwannee Correctional Institution-Annex (SCI) on November 12, 2015. <u>See</u> Complaint at 7-8. The fall resulted in an injury to Plaintiff's left shoulder/clavicle, which causes him "severe pain and [an] inability to lift [his] left arm beyond 45 [degrees]." <u>Id.</u> at 7.[3] Plaintiff seeks injunctive relief (medical treatment) and compensatory damages. <u>Id.</u> at 7.

Plaintiff provides a chronology of his medical treatment and the treatment recommendations he claims Defendants denied. Plaintiff received immediate treatment at SCI by Dr. Alexis Figueroa and Nurse A. Hale, who "administered an IV/pain

---

[2] In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. <u>Miljkovic v. Shafritz & Dinkin, P.A.</u>, 791 F.3d 1291, 1297 (11th Cir. 2015). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved.

[3] Plaintiff also claims that he fell at SCI again on August 14, 2017, injuring his right wrist. <u>See</u> Complaint at 6. In response to Defendant Jones' motion to dismiss, Plaintiff clarifies that his Eighth amendment claims are premised on his shoulder/clavicle injury resulting from the first fall. <u>See</u> Plaintiff's Jones Response at 2. He states that his "injury to [his] right wrist was never intended to be a separate claim," but was referenced in his Complaint to demonstrate negligence of FDC officials, such as Defendant Jones. <u>Id.</u> at 2-3.

med[ication] and attempted procedure(s) to re-set left shoulder/clavical [sic] to no avail." Id. Unable to properly address Plaintiff's emergent situation, Dr. Figueroa transferred Plaintiff to Shands Live Oak Hospital (Shands). Id.

At Shands, Dr. Kenney, the "attending physician," treated Plaintiff. Id. at 4, 8. He ordered several x-rays, which revealed "no dislocation or fracture," "performed a cursory examination," injected stronger pain medications, and released Plaintiff to the prison. Id. at 8. Plaintiff followed up with Dr. Figueroa on December 4, 2015. Dr. Figueroa ordered additional x-rays, told Plaintiff that he needed to see an orthopedist, and prescribed Indocin for pain. Id. at 9. The time-line is a bit unclear, but it appears that an x-ray taken in about December 2015 revealed "clavicle dislocation [that] was age-indeterminate." Id.

Dr. Figueroa ordered an orthopedic consult on February 4, 2016. Id. On March 19, 2016,[4] Corizon replied to Dr. Figueroa's order with an Alternative Treatment Plan (ATP). Id. Thereafter, on June 3, 2016, Dr. Figueroa submitted another order for an orthopedic consult, this time to the new medical contractor, Centurion. Centurion approved the request. Id. On July 18, 2016, the orthopedist, Dr. Kleinhands, ordered x-rays, conducted an

---

[4] Plaintiff records the date as March 19, 2017. The reference to 2017 appears to be a scrivener's error. See Complaint at 9.

examination, and recommended Open Reduction, Internal Fixation (ORIF) surgery. Id. According to Plaintiff, Dr. Kleinhands stressed that the surgery had the best chance of success if performed within nine months of the injury.[5] Id. Dr. Kleinhands also allegedly "expressed his frustration with Corizon impudently denying his surgical recommendations 'to save money' and [he] hoped the new company – Centurion – would be better." Id.

On September 16, 2016, Centurion, through Dr. Campbell, rejected the orthopedists' surgical recommendation and responded with an (ATP), stating the "[o]rthopedist evaluation does not indicate type of AC join[t] separation." Id. at 10.[6] Dr. Figueroa informed Plaintiff of the necessity for surgical intervention, stating, "it is obvious that [the injury] is not going to heal itself if not surgically repaired." Id. (alteration in original).

Plaintiff elaborates that Dr. Figueroa and Nurse Bridges suggested Centurion and the FDC would not approve his surgery for cost-saving reasons. Id. Plaintiff asserts that Dr. Figueroa advised him that "Centurion would not approve an MRI because 'they don't want any extra evidence to show that [Plaintiff] need[s] an expensive surgery.'" Id. (alterations in original). Moreover,

---

[5] The injury occurred on November 12, 2015, about eight months before Dr. Kleinhands recommended surgery.

[6] Plaintiff disputes the basis for the ATP, asserting that the July 18, 2016 report does in fact indicate the type of joint separation as a "grade-3." Complaint at 10.

Nurse Bridges allegedly told him that "she thinks the reason [f]or all the inmate refusals is because Centurion intentionally under-bid their contract with FDC, just to get it." Id.

As of the date Plaintiff filed his Complaint, November 15, 2017, the recommended surgery had not been approved. Id. Plaintiff asserts that in about January 2017, he "began suffering from numbness and pain in his left hand and forearm, and to a lesser extent, his right as well." Id. He has received medications for the pain. On May 18, 2017, Plaintiff saw Dr. Figueroa, complaining of "exacerbating pain in his left shoulder/clavicle area and that he was becoming increasingly disabled – his left shoulder frequently starting to pop out of place." Id. at 11. Dr. Figueroa performed a number of mobility tests and concluded that Plaintiff's "unrepaired shoulder 'condition will only get worse overtime [sic] to the point where an [o]rthopedist won't touch it.'" Id.

### IV. Defendant Jones' Motion to Dismiss

Recognizing that Plaintiff sues her in her official capacity, Defendant Jones asserts three arguments for dismissal: (1) she is entitled to Eleventh Amendment immunity as to Plaintiff's request for damages;[7] (2) the FDC is entitled to sovereign immunity; and

---

[7] Confusingly, Defendant Jones states in her overview of the issues and in her first argument heading that she is entitled to Eleventh Amendment immunity, though she provides a qualified-immunity analysis. See Jones Motion at 3-5. For instance, Jones states that "[q]ualified immunity under the Eleventh Amendment protects 'government officials from liability for civil damages insofar as

(3) Plaintiff's Complaint is a shotgun pleading. In the alternative, Plaintiff requests that the Court direct Plaintiff to file an amended complaint. <u>See</u> Jones Motion at 3, 10. Defendant Jones does not dispute that Plaintiff suffers a serious medical need, nor does she substantively address Plaintiff's claims against her. <u>See generally</u> Complaint.

In response to Defendant Jones' Eleventh Amendment immunity argument, Plaintiff clarifies that he "seeks only injunctive/prospective relief under the 42 U.S.C. § 1983 claim." <u>See</u> Plaintiff's Jones Response at 2. Plaintiff does not seek damages from Defendant Jones in her official capacity as to his claim arising under § 1983. <u>Id.</u> Because Plaintiff seeks only injunctive relief against Defendant Jones as to his constitutional claim arising under § 1983, Defendant Jones' motion in this regard is due to be denied as moot.

To the extent Plaintiff seeks damages for his state tort actions against Defendant Jones in her official capacity, such

---

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Id.</u> at 4 (internal quotations omitted). Defendant Jones' analysis incorrectly blends qualified immunity and Eleventh Amendment sovereign immunity. Because Plaintiff sues Jones in her official capacity, as Jones recognizes, qualified immunity is not applicable. <u>See</u> <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d 1271, 1276 (11th Cir. 1998) (recognizing that qualified immunity applies when officials are sued in their individual capacities, while the Eleventh Amendment bars claims for damages against officials sued in their official capacities).

relief is not barred by Florida Statutes section 768.28. The relevant section of the Florida statutory provision provides that "[t]he state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual," with limits placed on the extent and type of damages that can be awarded. Fla. Stat. § 768.28(5). Thus, Defendant Jones' motion is due to be denied to the extent she asserts that the FDC is entitled to sovereign immunity from Plaintiff's state tort actions.

Defendant Jones also objects to the form of Plaintiff's Complaint, asserting that Plaintiff failed to "separate into a different count each cause of action or claim for relief." See Jones Motion at 6. As such, Defendant Jones asserts, Plaintiff's Complaint does not comply with the civil pleading requirements set forth in Rules 8 and 10 of the Federal Rules of Civil Procedure. Id. at 6-7. Finally, Defendant Jones states that Plaintiff has failed to state a claim upon which relief can be granted. Specifically, Defendant Jones asserts that she is unable to discern the claims Plaintiff alleges against her because his Complaint is "devoid of any structure or organization regarding the possible causes of action." Id. at 8. Because of the lack of structure and inability to identify the causes of action against her, Defendant Jones states that she is unable to prepare a responsive pleading or assert appropriate affirmative defenses. Id. at 9.

Upon careful review of Plaintiff's Complaint, the Court finds that Defendant Jones' characterization of it as a "shotgun pleading" is not warranted. Plaintiff identifies separate causes of action and includes factual allegations as to each Defendant within each cause of action, in separately-numbered paragraphs. See Complaint 12-14. He also explains the basic background facts in a separate section. Id. at 8. Indeed, he has followed the instructions provided in Section IV ("Statement of Claim") of the civil rights complaint form. Complaint at 6. Plaintiff's Complaint is sufficiently clear to enable Defendant Jones to prepare a responsive pleading. Moreover, in his response to Defendant Jones' motion, Plaintiff clarifies his claims against her as the following: (1) deliberate indifference to serious medical needs; (2) negligent training of staff resulting in his slip-and-fall incidents; and (3) medical negligence by FDC's x-ray contractors and subcontractors who failed to accurately diagnose Plaintiff's clavicle injury. See Plaintiff's Jones Response at 4-5.

Defendant Jones' Motion is due to be denied. To the extent Defendant Jones believes Plaintiff cannot prove the claims asserted against her, she may raise such arguments in a well-prepared and reasoned motion for summary judgment.[8]

_____

[8] Defendant Jones does not substantively address Plaintiff's claims against her, but rather asserts, without analysis or support, that Plaintiff has failed to state a claim for relief because he "fails to allege ultimate facts upon which the claims rest." See Jones

## V. Dr. Campbell's Motion to Dismiss

Dr. Campbell asserts three ground for dismissal with prejudice: (1) Plaintiff fails to state a claim against him for deliberate indifference; (2) he is entitled to qualified immunity; and (3) Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (PLRA). See Campbell Motion at 1. Because exhaustion of administrative remedies is a matter in abatement, the Court will address that issue first.

### A. Exhaustion of Administrative Remedies

Dr. Campbell argues that Plaintiff did not exhaust his administrative remedies because "Plaintiff fails to identify any grievances [he] submitted against Dr. Campbell." Id. at 8. The PLRA requires exhaustion of available administrative remedies before a prisoner may initiate a § 1983 action with respect to prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."). Exhaustion of available administrative remedies is

---

Motion at 9. As noted, the Court finds that Plaintiff's Complaint adequately sets forth the claims he asserts against Defendant Jones, and he supports his claims for relief with relevant facts to enable Defendant Jones to respond. Because Defendant Jones does not substantively address Plaintiff's claims, the Court limits its analysis accordingly.

"a precondition to an adjudication on the merits." <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). <u>See also</u> <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007).

While "the PLRA exhaustion requirement is not jurisdictional[,]" <u>Woodford v. Ngo</u>, 548 U.S. 81, 101 (2006), "exhaustion is mandatory . . . and unexhausted claims cannot be brought," <u>Pavao v. Sims</u>, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing <u>Jones</u>, 549 U.S. at 211). Nevertheless, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." <u>See</u> <u>Jones</u>, 549 U.S. at 216. Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" <u>Id.</u> Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies. <u>Woodford</u>, 548 U.S. at 93. As such, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" <u>Id.</u>

Plaintiff concedes that he did not identify Dr. Campbell by name in any of his grievances. <u>See</u> Plaintiff's Campbell Response at 17-18.[9] Thus, the sole question before the Court is whether a

---

[9] Plaintiff says that he first learned of Dr. Campbell's identity in September 2016, but he only "conclude[d] with certainty that . . . [Dr.] Campbell did not care about [his] serious medical needs" during his pre-suit investigation, shortly before he filed his Complaint on November 13, 2017. <u>See</u> Plaintiff's Campbell Response at 17-18.

failure to identify a particular defendant in a prison grievance complaint results in a failure to exhaust. Dr. Campbell relies on Brown v. Sikes, 212 F.3d 1205, 1209-10 (11th Cir. 2000), to support his argument that Plaintiff's failure to identify him in his grievances supports dismissal of the claim. In Brown, the court ruled that a prisoner is required to provide only as much detail as is available to him at the time he files a grievance, including the names of "the individuals responsible for the alleged injury or deprivation." Id. at 1208. The court suggested in a footnote that had the plaintiff known the identities of the defendants, proper exhaustion would have required him to identify them. See id. at 1208 n.3.

The Supreme Court later clarified that the PLRA does not mandate "a 'name all defendants' requirement," thus limiting the Brown court's holding. Jones, 549 U.S. at 217. In Jones, the Supreme Court held that proper exhaustion, under the PLRA, requires only that the prisoner complete the review process "in accordance with the applicable procedural rules," as set forth in the prison grievance process itself. Id. at 218. The Court reversed the Sixth Circuit's opinion that the plaintiff failed to exhaust because he did not identify the defendants as required by a judicially-created procedural rule. The Court observed that the "lower court's procedural rule lacks a textual basis in the PLRA." Id. at 217. See also Parzyck v. Prison Health Servs., 627 F.3d 1215, 1218 (11th

Cir. 2010) ("A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim.").

Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step process as fully set forth in the Florida Administrative Code. See Fla. Admin. Code r. 33-103.001 through 33-103.018. Importantly, Dr. Campbell does not contend that Plaintiff failed to follow the three-step grievance process, nor does he contend that Plaintiff failed to grieve the specific issue he raises in his Complaint. Dr. Campbell's sole exhaustion challenge is that Plaintiff failed to identify him in the grievances Plaintiff filed. See Campbell Motion at 8.

Dr. Campbell has not carried his burden to demonstrate that Plaintiff failed to exhaust his administrative remedies. To the extent Plaintiff failed to identify Dr. Campbell in his grievances, his failure to do so is not fatal to his claim because the Florida grievance procedure does not require that a prisoner identify each person he intends to later sue. See Fla. Admin. Code r. 33-103.005 through 33-103.007 (requiring that prisoners write their grievances legibly, include accurate facts, and address only one issue). See also Jones, 549 U.S. at 217; Parzyck, 627 F.3d at 1219 ("Section 1997e(a)'s exhaustion requirement is designed 'to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.").

14

Accordingly, Dr. Campbell's motion is due to be denied to the extent he seeks dismissal based on Plaintiff's failure to exhaust his administrative remedies.

### B. Deliberate Indifference & Qualified Immunity

Dr. Campbell argues that Plaintiff fails to allege he had "knowledge of a substantial risk to Plaintiff's health," and that knowledge of a condition is not the same as knowledge of a substantial risk of harm as required under the deliberate indifference standard. Campbell Motion at 5. Dr. Campbell further states that "Plaintiff's own allegations show that he received appropriate medical treatment while incarcerated," including x-rays, evaluations, and pain medication. Id. In addition, Dr. Campbell draws the Court's attention to Plaintiff's allegation that an x-ray revealed his shoulder injury was "age-indeterminate," and that his shoulders had previously been "fully-surgically repaired." Id. at 5-6. Stating that Plaintiff's Complaint demonstrates that he has received and continues to receive care, Dr. Campbell concludes that Plaintiff "merely desires different modes of treatment." Id. at 6. He also argues that because Plaintiff has failed to state a claim against him, he is entitled to qualified immunity. Id. at 6-7.

A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To show that a prison official acted with

deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component, showing that he has a serious medical need. <u>Brown</u>, 387 F.3d at 1351. Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." <u>Richardson v. Johnson</u>, 598 F.3d 734, 737 (11th Cir. 2010).

> To establish deliberate indifference, [a plaintiff] must prove (1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence. <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999). Subjective knowledge of the risk requires that the defendant be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Caldwell v. Warden, FCI Talladega</u>, 748 F.3d 1090, 1099–1100 (11th Cir. 2014).

<u>Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.</u>, 871 F.3d 1272, 1280 (11th Cir. 2017).[10]

A plaintiff must demonstrate that a defendant's response to his medical needs was poor enough to constitute an unnecessary and wanton infliction of pain, and "not merely accidental inadequacy

---

[10] The Eleventh Circuit recently confirmed that the objective prong requires a finding of conduct that is more than "mere," as opposed to "gross" negligence. <u>Daniels v. Jacobs</u>, No. 17-14429, 2018 WL 4998130, at *8 (11th Cir. Oct. 16, 2018) (per curiam).

. . . or medical malpractice." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (citing Estelle, 429 U.S. at 105-106). As such, allegations of medical negligence are not cognizable as an Eighth Amendment violation to support a claim under § 1983. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). See also Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'").

"The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference." Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985). A delay in providing necessary medical treatment, for non-medical reasons, also states a claim for deliberate indifference. Id. See also Harris v. Coweta Cty., 21 F.3d 388, 393-94 (11th Cir. 1994). The Eleventh Circuit has recognized that, even when a prisoner receives some medical treatment, a plaintiff states a claim for deliberate indifference if he alleges the care he received was "so cursory as to amount to no treatment at all," was grossly inadequate, or was guided by a "decision to take an easier but less efficacious course of treatment." McElligott, 182 F.3d at

1255. See also Nam Dang, 871 F.3d at 1280. However, alleging a "simple difference in medical opinion" does not state a deliberate indifference claim. Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 2007).

After a careful analysis of Plaintiff's allegations, the Court finds that Plaintiff has alleged a claim for deliberate indifference against Dr. Campbell. In his Complaint, Plaintiff states that Dr. Campbell "absolutely knew about [his] serious medical need because the examining physician, Dr. Figueroa, fully advised him." Complaint at 15. According to Plaintiff, Dr. Figueroa called Dr. Campbell in about December 2016, to "persuade [Dr.] Campbell to approve" the surgery. Id. at 10. Dr. Campbell allegedly stated that "he doesn't care," and he refused to "help." Id. Plaintiff asserts that Dr. Campbell

> was the decision-maker as to whether . . . the [o]rthopedist's recommendation for ORIF was approved or denied. He intentionally disregarded the substantial risk posed to [Plaintiff's] health by rejecting both M.D. Figueroa's and Specialist Dr. Kleinhands' recommendations [for surgery]. Defendant Campbell never examined [Plaintiff], yet he made the medical decision to delay the [o]rthopedist consult for approximately 9-months, and then deny the surgical recommendation of the [o]rthopedist, while the condition further exacerbated, and additional medical complications arose.

Id. at 15. Plaintiff also alleges that Dr. Campbell "consciously ignored the [o]rthopedist's diagnostic findings," motivated by cost-saving concerns. Id. at 16.

In sum, Plaintiff alleges that Dr. Campbell (1) knew of Plaintiff's need for surgical intervention, (2) refused to approve the orthopedic-recommended surgery for cost-saving concerns, and (3) unnecessarily delayed approving the orthopedic consult. See Complaint at 10, 15. These allegations, if proven, may demonstrate deliberate indifference to a serious medical need. See Ancata, 769 F.2d at 704; Harris, 21 F.3d at 393-94. Therefore, the allegations state a claim to relief that is plausible on its face. See Twombly, 550 U.S. at 570. Accordingly, Dr. Campbell's motion to dismiss is due to be denied.

## VI. Dr. Kenney's Motion to Dismiss

Dr. Kenney argues that Plaintiff fails to state a claim against him. First, Dr. Kenney maintains that Plaintiff has not alleged that he was acting "under color of law" at the relevant time. See Kenney Motion at 6. Second, Dr. Kenney argues that Plaintiff fails to allege that he was deliberately indifferent to Plaintiff's serious medical needs. Id. at 8.[11]

---

[11] In addition to arguing that Plaintiff fails to allege state action and fails to state a claim for deliberate indifference, Dr. Kenney argues that Plaintiff fails to allege a claim for medical malpractice against him. See Kenney Motion at 10, 11. The Court does not read Plaintiff's Complaint to assert such a claim. Moreover, in his response, Plaintiff confirms that he does not assert a claim for medical malpractice against Dr. Kenney. See Plaintiff's Kenney Response at 14.

Before addressing whether Plaintiff states a claim against Dr. Kenney, the Court will address Dr. Kenney's additional argument that he was not, as a matter of law, a "state actor" when he rendered care to Plaintiff. See id. at 6. With respect to whether he was a state actor as a matter of law, Dr. Kenney asks the Court to treat his motion as one for summary judgment under Rule 56. To that end, he provides three exhibits: (1) his affidavit, curriculum vitae, and an employment contract between him and IPN Emergency Physicians of North Florida, PA (IPN) (Doc. 30-1); (2) a professional services agreement between IPN and InPhyNet Contracting Services, Inc. (InPhyNet) (Doc. 30-2); and (3) an agreement to provide emergency services between InPhyNet and Shands (Doc. 30-3).

The Court declines to treat Dr. Kenney's motion as one for summary judgment under Rule 56; thus, the Court will not consider the evidence he offers in support of his motion. See Fed. R. Civ. P. 12(d). Plaintiff has not had an opportunity to engage in discovery to fairly respond to Dr. Kenney's assertion that he does not qualify as a state actor as a matter of law. Moreover, after its own research, the Court finds that the one persuasive authority upon which Dr. Kenney relies does not adequately address the complex legal question he asks this Court to consider. See Kenney Motion at 6-7 (citing McIlwain v. Prince William Hosp., 774 F. Supp. 986 (E.D. Vir. 1991)). Indeed, the Middle District of

Alabama, after engaging in an extensive review of decisions of other federal courts, observed that there is a "split in authority on the issue of whether a private physician who treats a prisoner must be under contract with the state prison system or its medical care provider to be deemed a state actor for purposes of § 1983." Dixon v. Baptist So. Med. Hosp., No. 2:07-CV-662-TFM, 2010 WL 431186, at *7 (M.D. Ala. Feb. 1, 2010). The Court also noted that "neither the Eleventh Circuit nor the United States Supreme Court has directly addressed" the issue. Id. at *6.[12]

Given the above, the Court finds that the question of whether Dr. Kenney was a state actor when he rendered care to Plaintiff is best addressed upon a more complete record and more thorough briefing by the parties. Thus, the Court declines to reach a conclusion as a matter of law as to whether Dr. Kenney was a state actor at the relevant time. Instead, the Court will construe his motion as one under 12(b)(6), for failure to state a claim, and will limit its analysis and ruling accordingly.

### A. Action Under Color of Law

In his motion, Dr. Kenney asserts that Plaintiff fails to allege that he "was a state actor, acted 'under color of law[,]' or acted under the authority of any governmental entity in providing care and treatment to [him]." See Kenney Motion at 7. A

---

[12] The court declined to reach a decision on this issue, and instead ruled on an alternative basis. See Dixon, 2010 WL 431186 at *7.

viable claim under 42 U.S.C. § 1983 requires a plaintiff to establish two essential elements: the conduct complained of was committed by a person acting under color of state law, and the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. See West v. Atkins, 487 U.S. 42, 48 (1988); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam).

In his Complaint, Plaintiff asserts the following: (1) he was an inmate at Suwannee Correctional Institution—Annex at the time of his injury; (2) officials at SCI transported him to Shands for medical treatment following the injury; (3) Dr. Kenney "was the attending physician on the night . . . when [he] was brought to Shands . . . for emergency care"; and (4) "Shands Hospital System INC. was contracted with FDC or Corizon Correctional Healthcare to provide emergency medical services." Complaint at 4, 8. Plaintiff further alleges that "[a] connected series of actions/inactions by persons within FDC and/or their medical contractors/subcontractors" caused him injuries that are the basis of his Complaint. Id. at 5.

While Plaintiff does not overtly state that Dr. Kenney himself was a "state actor," his assertions, and the logical inferences to be drawn therefrom, are that Dr. Kenney was providing medical treatment on behalf of the state at the relevant time. He alleges that Dr. Kenney was the attending physician who treated him at

22

Shands, and he alleges that Shands provided healthcare to inmates of FDC through a contract for services. The Court finds that Plaintiff sufficiently pleads "state action" on Dr. Kenney's part to survive a motion to dismiss on that basis. Thus, Dr. Kenney's Motion to Dismiss is due to be denied insofar as he argues that Plaintiff fails to plead he was a "state actor" at the time of treatment (Section III.A.1).

## B. Deliberate Indifference to Serious Medical Needs

Dr. Kenney also asserts that Plaintiff has failed to adequately plead a claim for deliberate indifference against him. See Kenney Motion at 8. According to Dr. Kenney, Plaintiff's allegations "refute any suggestion that Dr. Kenney 'denied' medical care." Id. at 9. Dr. Kenney states that the facts alleged do not attribute to him "knowledge of any alleged reckless delay in seeing an orthopedist," and he suggests that he had no obligation to refer Plaintiff to an orthopedist because he was not involved with Plaintiff's care after he was discharged from Shands. Id. Dr. Kenney also argues that Plaintiff alleges only "unreasonable" care, which is "a term that cannot support any allegation of deliberate indifference." Id. He further states that Plaintiff fails to allege "ultimate facts which could be objectively interpreted that Dr. Kenney was deliberately indifferent to [his] serious medical needs." Id.

Applying the above Eighth Amendment legal principles, and construing Plaintiff's pro se Complaint liberally, the Court finds that Plaintiff has done just enough to allege a claim for deliberate indifference against Dr. Kenney. As to the objective component of a deliberate indifference claim, Dr. Kenney concedes that Plaintiff alleges a serious medical need. See Kenney Motion at 8 n.2.

As to the subjective component, Plaintiff alleges that Dr. Kenney "knew about [his] serious medical need" because the "protruding clavicle was/is obvious even to lay persons and can be seen clearly on radiographs"; Dr. Kenney performed only a "cursory examination"; Plaintiff informed Dr. Kenney that pre-injury x-rays were available for comparison to the x-rays taken at Shands; Dr. Kenney declined to review the pre-injury x-rays; and while Dr. Kenney provided pain medication, he offered no treatment to fix the "clearly-obvious protruding clavicle," despite being sent to the emergency room presumably for such treatment. Complaint at 8-9, 14. Plaintiff further alleges as follows:

> Dr. Kenney knew that, if left unattended, the shoulder/clavicle injury posed a substantial risk of serious harm to [him]. [Dr.] Kenney consciously ignored that risk and Plaintiff's insistence that the injury was new, and his pleas that the prior x-rays would prove it. Defendant Dr. Kenney's demeanor during the . . . exam was generally uncaring and suggested he was deliberately indifferent towards the serious medical needs of prisoners. The Plaintiff learned that Dr. Kenney has a history of dealing with emergency access patients similarly.

Id. at 14. Plaintiff also alleges that when he treated with Dr. Figueroa after his release from Shands, Dr. Figueroa "expressed disbelief that nothing was done at Shands to repair the clearly-obvious protruding clavicle." Id. at 9.

The above allegations, and reasonable inferences to be drawn therefrom, sufficiently state a claim for deliberate indifference against Dr. Kenney. Plaintiff alleges more than a mere disagreement with the treatment provided. Liberally construing his allegations, Plaintiff asserts that the treatment provided was "so cursory as to amount to no treatment at all," or that an easier, less effective treatment plan was provided.

Dr. Kenney's assertion that he provided some treatment to Plaintiff does not mean that Plaintiff has failed to state a claim for deliberate indifference. See, e.g., McElligott, 182 F.3d at 1255 ("We have also held that deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment."); Ancata, 769 F.2d at 704 (recognizing that deliberate indifference can be established by showing that a medical provider chose an easier but less effective treatment option). Moreover, the Court finds unpersuasive Dr. Kenney's contention that Plaintiff's use of the term "unreasonable" demonstrates that he fails to state a claim for deliberate indifference. See Kenney

Motion at 9. This Court is not convinced that a pro se plaintiff's failure to use the correct nomenclature results in his failure to state a claim.

In liberally reading a pro se plaintiff's complaint, a court should consider the factual allegations in their totality and construe reasonable inferences in his favor. In doing so, the Court finds that Plaintiff states a claim against Dr. Kenney for deliberate indifference to his serious medical needs. Whether Plaintiff can prove a claim for deliberate indifference, or whether the evidence will demonstrate mere negligence is more properly raised in a Rule 56 motion with supporting records, affidavits, and other relevant documents. Here, Plaintiff has pled "enough fact to state a claim to relief that is plausible on its face." See Twombly, 550 U.S. at 570.

## VII. Dr. Shubert's Motion to Dismiss

Dr. Shubert argues that Plaintiff fails to state a claim for relief against him because Plaintiff's allegations are conclusory and Plaintiff's claim against him rests on a theory of supervisory liability, which "has not been allowed in these types of cases for forty years." See Shubert Motion at 1, 9.[13]

---

[13] With the Court's permission, Dr. Shubert filed a Reply (Doc. 79; Shubert Reply), in which he clarifies that he does not dispute that Plaintiff has a serious medical need. However, he states that he had no knowledge of that serious medical need. See Shubert Reply at 2.

As Dr. Shubert points out in his motion, "it is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in [her] individual capacity for the actions of a subordinate is extremely rigorous." Id. Supervisor liability arises only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotation marks and citation omitted).

> The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.' Alternatively, the causal connection may be established when a supervisor's 'custom or policy ... result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'

Cottone, 326 F.3d at 1360 (internal citations omitted).

Supervisor liability can only be established in one of two ways—either by showing personal participation by a supervisor in a constitutional violation or by demonstrating "a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Id. Dr. Shubert did not personally participate in Plaintiff's care, nor does Plaintiff assert that he did. See generally Complaint. Thus, to state a claim, Plaintiff must allege a causal connection between Dr. Shubert's actions and the alleged constitutional violation.

The Court finds that Plaintiff's allegations state a claim against Dr. Shubert based on supervisor liability. Plaintiff asserts that Dr. Shubert directed Corizon healthcare providers to follow a policy to "delay or deny medical care to save Corizon money." Complaint at 15. According to Plaintiff,

> Executive Director Shubert knew his company provided constitutionally inadequate medical care to inmates via his awareness of the numerous federal lawsuits by inmates across the country. It has been said that it is Corizon's business model to delay or deny medical care to save Corizon money. Executive Director, Dr. Shubert[,] instructed company employees to follow that policy. His policies, practices, and/or customs implemented in that vein were the driving force behind his company's constitutional medical violations, including the Plaintiff's. Corizon employees purposely delay Orthopedic consults for cost-saving reasons – aware that their FDC contract was about to be terminated.

Id. Plaintiff's allegations, if true, would provide a basis for Eighth amendment liability. Liberally construing Plaintiff's allegations, he asserts that Dr. Shubert implemented a policy

resulting in deliberate indifference to serious medical needs, failed to correct constitutional violations despite his knowledge of a history of widespread abuse, and directed employees to follow a policy to violate inmates' constitutional rights. See Cottone, 326 F.3d at 1360. These allegations state a claim against Dr. Shubert. Therefore, Dr. Shubert's motion to dismiss is due to be denied.

## VIII. Plaintiff's Discovery Motion and Dr. Campbell's Motion to Stay Discovery

First, in his Discovery Motion, Plaintiff states that he wants to perform "limited discovery pursuant to Fed. R. Civ. P. 33, Interrogatories to Parties[,] and 34, Document Production." See Discovery Motion at 1. Plaintiff does not specify the subject matter of the requested discovery. Rather, he states that, since he filed his Complaint, his pain and disability have increased exponentially, and after his transfer to Zephyrhills Correctional Institution (ZCI), he has been denied medical treatment, resulting in new claims against other medical providers. See id. at 1, 2. In addition, he states that information included in Defendants' Motions to Dismiss require him "to further develop the new information and add it to the Complaint via a supplemental pleading pursuant to Fed. R. Civ. P. 15(d)." Id. at 2.

Plaintiff's Discovery Motion is due to be denied.[14] The Court has not set a deadline for discovery. To the extent Plaintiff is concerned about his ability to "substantiate his claims before summary judgment," see id. at 4, he will be afforded a full and fair opportunity to engage in discovery after Defendants answer his Complaint. To the extent Plaintiff requests, in his Discovery Motion, to amend his Complaint, his request is not properly before this Court. He has not filed a motion to amend pursuant to Federal Rule of Civil Procedure 15, and he does not provide a proposed amended complaint. To the extent Plaintiff seeks to amend his complaint to add new, unrelated claims that arose after he filed this Complaint, or to add evidence, he may not do so. New claims against new defendants must be properly exhausted and raised in a new civil rights complaint. Any evidence Plaintiff intends for the Court to consider may be presented in support of or in opposition to a motion for summary judgment.

Second, Dr. Campbell's Motion to Stay Discovery is due to be denied as moot. The parties may engage in discovery as of the date of this order. The Court will establish a discovery deadline and a deadline for the filing of dispositive motions after Defendants answer the Complaint.

---

[14] In light of the Court's ruling on Plaintiff's Discovery Motion, Plaintiff's Motion to Rule is now moot.

Accordingly, it is

**ORDERED:**

1.    Defendant Jones' Motion to Dismiss (Doc. 23) is **DENIED in part as moot** and **otherwise DENIED** as stated in this order.

2.    Dr. Campbell's Motion to Dismiss (Doc. 28) is **DENIED.**

3.    Dr. Kenney's Motion to Dismiss (Doc. 30) is **DENIED.**

4.    Dr. Shubert's Motion to Dismiss (Doc. 55) is **DENIED.**

5.    Plaintiff's Motion for Leave to Conduct Limited Discovery (Doc. 54) is **DENIED.**

6.    Dr. Campbell's Motion to Stay Discovery (Doc. 69) is **DENIED as moot.** The parties may engage in discovery as of the date of this order. The Court will establish a discovery deadline and a deadline for the filing of dispositive motions after Defendants answer the Complaint.

7.    Plaintiff's Objection to Dr. Shubert's Motion for Leave to File a Reply and to the Court's Order granting the motion (Doc. 80) is **OVERRULED.**

8.    Plaintiff's Motion for a Ruling on his Motion for Leave to Conduct Discovery (Doc. 86) is **GRANTED** only to the extent the Court has ruled on the motion in this order.

9.    Defendants shall answer the Complaint within twenty days of the date of this order.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of January, 2019.

_____
BRIAN J. DAVIS
United States District Judge


Jax-6
c:
Robert W. Cronin
Counsel of Record